# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| **JANICE HOLYFIELD,** ) | |
| ) | |
| **PLAINTIFF,** ) | |
| ) | **CIVIL ACTION NO.:** |
| v. ) | |
| ) | |
| **CITY OF TARRANT,** ) | **JURY DEMAND** |
| ) | |
| **DEFENDANT.** ) | |
| ) | |
| ) | |

## COMPLAINT

**I.     JURISDICTION, VENUE, AND CONDITIONS PRECEDENT TO SUIT**

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331, 1343, 2201 and 2202. Venue is proper in the Northern District of Alabama Southern Division under 28 U.S.C. §1391(b).

2. This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, including the Civil Rights Act of 1991, 42 U.S.C. Section 2000(e), *et seq*. (hereinafter "Title VII"), 42 U.S.C. § 1981a and the Family Medical Leave Act ("FMLA"), 29 U.S.C.§ 2611, et. seq.

3. Plaintiff has fulfilled all conditions precedent to the institution of this action

under Title VII by timely filed her charges of discrimination within 180 days of the occurrence of the last discriminatory act. Plaintiff timely filed her lawsuit within 90 days of the receipt of her Right-to-Sue letters from the EEOC.

4. Venue is proper in the Northern District of Alabama under 28 U.S.C. §1391(b), and the Southern Division pursuant to Title VII's venue provision, 42 U.S.C. § 2000e-5(f).

## II.    PARTIES

5. Plaintiff, Janice Holyfield, ("Plaintiff") is a citizen of the United States, and a resident of the State of Alabama.

6. Defendant, City of Tarrant, ("Defendant") is an entity subject to suit under Title VII and the FMLA.

## III.   FACTS

7. Plaintiff is a 53 year old woman who began working for Defendant as a Principle Accountant on November 4, 2019 reporting to Mayor Loxci Tuck, who was eighty seven (87) years old.

8. Plaintiff performed her job well, receiving a good performance review from Mayor Tuck on October 29, 2020.

9. In the late summer of 2020 Plaintiff had a Transient Ischemic Attack (TIA),

and after that she was unable to get her blood pressure under control so her doctor took her out of work until November 24, 2020.

10. Plaintiff requested FMLA and that leave was approved by Mayor Tuck for a time period of October 29, 2020 to November 24, 2020.

11. Days after Plaintiff went on FMLA, Wayman Newton, who was 40 years old, became Mayor on November 2, 2020.

12. Mayor Newton's secretary Gail Hill left Plaintiff a message saying if she did not show up for a meeting on November 2, 2020 she would be fired.

13. Plaintiff contacted the personnel board for advice on that same day, November 2, 2020, and was told Mayor Newton should not be trying to contact her while she was out on FMLA and what he was doing to her violated the FMLA.

14. Plaintiff contacted the secretary and explained she could not come in and go to the meeting because she was currently on FMLA.

15. The next day, on November 3, Mayor Newton emailed Plaintiff a letter and told her she was reassigned from the Principal Accountant (grade 27 step 10 with a premium of 5%) position and demoted down to a Senior Accountant (grade 23 step 10).

16. This demotion resulted in Plaintiff receiving lower pay. Also, Mayor

Newton denied Plaintiff premium pay after awarding the other City employees with advanced degrees premium pay.

17. Mayor Newton's letter further stated that Plaintiff should cease doing City business while on leave. However, the only "city business" that Plaintiff did was she had forwarded an email to a new employee with his passwords.

18. Next Mayor Newton instructed Defendant's Information Technology department to shut off Plaintiff's credentials and access to the City.

19. Plaintiff filed an EEOC Charge on November 18, 2020 stating that Mayor Newton had discriminated against her based on her disability and age.

20. Plaintiff returned from FMLA leave on November 24, 2020.

21. Defendant failed to restore Plaintiff to her prior position. Instead, Plaintiff remained demoted to her Senior Accountant position.

22. When Mayor Newton received Plaintiff's EEOC charge, which was on or about November 24, 2020 according to what Defendant submitted to the EEOC, Mayor Newton began to treat Plaintiff in an even more hostile and abusive manner by yelling at her and demeaning her on a daily basis.

23. On January 8, 2021, Mayor Newton suspended Plaintiff for two days without pay for a non legitimate reason. The incident at issue concerned a customer complaining about a bill. Plaintiff's coworker, who does not have

a disability and had never complained of discrimination, had actually improperly billed the customer, not Plaintiff.

24. Mayor Newton suspended Plaintiff allegedly because she had not generated a new bill for the customer. In the suspension notice Mayor Newton stated that Plaintiff had "not only placed the integrity and reputation of the Electric Department at stake, you also caused a potential problem with regulators."

25. These allegations stated by Mayor Newton in the suspension are false and are pretext created to hide Mayor Newton's retaliation against Plaintiff for her engagement in the protected activity of filing an EEOC Charge.

26. Plaintiff filed a second EEOC charge on January 12, 2021 explaining how Mayor Newton was retaliating against Plaintiff for her act of filing an EEOC charge on November 18, 2020.

27. When Mayor Newton received notice of Plaintiff's second EEOC Charge, his retaliatory treatment of Plaintiff only increased in intensity.

28. On January 21, 2021, Mayor Newton filed a false police report with the Sheriff's office against Plaintiff, stating that Plaintiff had allegedly said "I have people that will put him in a ditch."

29. The Sheriff did not take any action against Plaintiff as the allegations were baseless, so Mayor Newton filed a complaint with the State Bureau of

Investigation (SBI). In March, Plaintiff spoke to an SBI investigator who told Plaintiff that the Mayor's allegations against her were going nowhere.

30. Plaintiff continued working for several months for Mayor Newton, despite Newton's allegations that Plaintiff had threatened him with physical harm.

31. In late March 2021, to escape the retaliation and discrimination, Plaintiff asked Mayor Newton to grant her request to transfer to the City of Birmingham.

32. Instead of granting Plaintiff's transfer request, on April 27, 2021 Mayor Newton issued a false discipline against Plaintiff for "Death threats made against Mayor Wayman Newton."

33. On April 29, 2021, Plaintiff went to the hospital for the stress the Mayor had been inflicting on her, and her doctor took her off work for two weeks.

34. Mayor Newton then proceeded with a hearing without Plaintiff present and fired her on May 3, 2021 stating in the termination paperwork "You are terminated for making death threats against my life."

35. The Notice To Employee of Disciplinary Decision from Mayor Newton to Plaintiff dated May 3, 2021, stated that she has been found guilty of violating the following:

**Personnel Board Rules & Regulations**

> 12.2(b) Commission of a Criminal Offense
>
> 12.2 (c) Conduct Unbecoming a Classified Employee
>
> **Tarrant Employee Handbook:**
>
> 9.1 Each employee is expected to display conduct on and off the job in a manner as to reflect credit on both the employee and the City.

36. After her discharge, Defendant replaced Plaintiff with a man named Willie Davis.

37. Defendant terminated Plaintiff for engaging in protected activity of filing an EEOC Charge, because of her female gender, and in retaliation for taking and requesting FMLA.

38. Plaintiff was never arrested for her alleged threats to harm the Mayor despite Mayor Newton's attempts to have her arrested.

39. However, Mayor Newton has been arrested twice during his short tenure as Mayor, both times because of his threatening behavior towards others in City government who challenged his decisions.

40. Mayor Newton was arrested on June 16, 2021, and charged with assault on the former Police Chief when Mayor Newton slammed a door on the former Chief in November 2020.

41. Mayor Newton's second arrest stemmed from a July 19 incident at Tarrant

City Hall following a council meeting.  According to the report, and in the presence of several witnesses, Mayor Newton shouted at a council member "F...k you" several times, then said to him "F...k you and your wife" multiple times, and then said "I'm going to f...k your wife" several times and further stated "I'm going to f...k your wife with my twelve inch d...k."

42. Mayor Newton referred to another counsel person who challenged him as an "uneducated house n...er."

43. Mayor Newton's aggressive attacks on those who challenge him show his intent to retaliate against people such as Plaintiff who file EEOC Charges against him.

44. Mayor Newton's own repeated violation of the very policies he used to terminate Plaintiff show that he does not take those policies seriously and his reasons for firing Plaintiff are pretextual.

45. Mayor Newton's statements about the councilman's wife and his explicit threat to "f...k her" with his "12 inch d...k" shows his hostility towards women.

46. Defendant's articulated reason(s) for terminating Plaintiff are not legitimate reasons for terminating her, and they are a pretext created to hide Defendant's decision to demote and terminate Plaintiff because of her

female gender. And, in the alternative, even if Defendant had legitimate reasons for the above stated adverse actions it took towards Plaintiff, gender discrimination remained at least a motivating factor in its decision.

47. But for Plaintiff requesting FMLA she would not have been demoted.

48. But for Plaintiff engaging in the protected activity of filing EEOC Charges she would not have been fired.

## CAUSES OF ACTION

### Count I – Gender Discrimination

49. Plaintiff brings this Count pursuant to Title VII of the Act of Congress known as the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq. as amended, and 42 U.S.C. Section 1981a.

50. During her employment, Defendant discriminated against Plaintiff because of her female gender by taking adverse employment actions up to and including demoting her and terminating her employment.

51. After Defendant demoted and terminated Plaintiff, Defendant replaced her with a man named Willie Davis.

52. Defendant's articulated reasons for these adverse employment actions, up to and including terminating her, are not legitimate.

53. Plaintiff may prevail under a mixed-motive theory, as even if Defendant had

legitimate reasons for the actions it took towards her, gender remained at least a motivating factor in the adverse employment actions Defendant took against her.

54. Said discrimination was done maliciously, willfully, and with reckless disregard for the rights of Plaintiff.

55. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory damages is her only means of securing adequate relief.

56. Plaintiff is now suffering, and will continue to suffer irreparable injury from Defendant's unlawful conduct including pain, humiliation, mental anguish and suffering, and loss of enjoyment of life.

**Count II – Retaliation**

57. Plaintiff brings this Count pursuant to Title VII of the Act of Congress known as the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq. as amended, and 42 U.S.C. Section 1981a, and 42 U.S.C. Section 1981.

58. Plaintiff engaged in protected activity by filing EEOC Charges triggering the "participation clause" of Title VII which prohibits retaliation against an employee because she filed an EEOC Charge.

59. In response to Plaintiff engaging in protected activity by filing EEOC Charges, Defendant retaliated against Plaintiff by filing false police and SBI reports, and terminating her employment.

60. There is a causal relationship between Plaintiff's engagement in protected activity and the materially adverse employment actions taken against her by Defendant including terminating her.

61. Said retaliation was done maliciously, willfully, and with reckless disregard for the rights of Plaintiff.

62. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory damages is her only means of securing adequate relief.

63. Plaintiff is now suffering, and will continue to suffer, irreparable injury from Defendant's unlawful conduct including pain, humiliation, mental anguish and suffering, and loss of enjoyment of life.

**Count III – The Family Medical Leave Act**

64. As stated, Plaintiff was an eligible employee under 29 CFR 825.110. She had a serious health condition pursuant to 29 U.S.C. § 2612 and 825.113 and was entitled to take leave for that serious health condition.

65. Plaintiff was entitled to benefits under the FMLA and Defendant acknowledged such by initially approving Plaintiff's request for leave.

66. Defendant is an employer in accordance with 29 U.S.C. § 2611.

67. Defendant violated the Family Medical Leave Act, 29 U.S.C. § 2614, *inter alia*, by demoting Plaintiff after she requested medical leave and by interfering with Plaintiff's rights under the FMLA while she was on medical leave, and failing to restore her to her original position upon her return from FMLA leave.

68. Further, Defendant retaliated, coerced, oppressed, and/or took adverse action against Plaintiff due to her need for leave under the FMLA. 29 C.F.R. §825.220.

69. Defendant willfully violated the FMLA when it interfered with her FMLA rights and when it retaliated against her for taking FMLA.

70. As a result of Defendant's actions, Plaintiff has suffered extreme harm, including, but not limited to, loss of employment opportunities, denial of wages, compensation and other benefits and conditions of employment.

## IV. DAMAGES

71. Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional and physical pain and anguish, and

lost wages as a consequence of Defendant's unlawful conduct.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

72. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of Defendant are violative of the rights of Plaintiff as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and the FMLA, 29 U.S.C.§ 2611, *et. seq*.

73. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000e et seq, and the FMLA, 29 U.S.C.§ 2611, *et. seq*.

74. Enter an Order requiring Defendant to make Plaintiff whole by awarding her reinstatement in the position and salary level she would have occupied absent discrimination, backpay, front pay if reinstatement is not possible, lost wages (plus interest), medical expenses, compensatory damages, liquidated damages, post judgment interest, loss of benefits including

retirement, pension, seniority and other benefits of employment.

75. Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

## JURY DEMAND

Plaintiff Demands a Trial by Struck Jury.

Respectfully submitted,

/s/ Jon C. Goldfarb
Jon C. Goldfarb asb-5401-f58j
L. William Smith asb-8660-a61s
Christina M. Malmat asb-1214-y44q
Lieselotte Carmen-Burks asb-8304-t46e
Counsel for Plaintiff

**OF COUNSEL:**
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, LLC.
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500